# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SPECIAL COUNSEL
EX REL. DALE KLEIN,
          Petitioner,

      v.

DEPARTMENT OF VETERANS
   AFFAIRS,
          Agency.

DOCKET NUMBER
CB-1208-16-0023-U-3

DATE: July 18, 2016

# THIS STAY ORDER IS NONPRECEDENTIAL[*]

Elizabeth Q. McMurray, Esquire, and Sheri S. Shilling, Esquire,
   Washington, D.C., for the petitioner.

Loretta Poston, Esquire, Tampa, Florida, for the relator.

G.M. Jeff Keys, Esquire, St. Louis, Missouri, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

---

[*] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**ORDER ON STAY REQUEST**

¶1        Pursuant to 5 U.S.C. § 1214(b)(1)(B), the Office of Special Counsel (OSC) has requested a 60-day extension of the previously granted 45-day stay of the agency's termination of Dr. Dale Klein's appointment.  For the reasons discussed below, we GRANT OSC's request and extend the stay through September 13, 2016, but we DENY OSC's request to order the agency to return Dr. Klein to the duties and responsibilities of a pain management physician at the Department of Veterans Affairs (DVA) Poplar Bluff Medical Center during the stay.  However, we ORDER the agency to provide a detailed accounting to the Board and OSC to establish that it has searched for vacant positions and modified assignments with physician duties within the local commuting area to which it can place the appellant and that it considered him for any such vacancies.

**BACKGROUND**

¶2        On May 26, 2016, OSC requested a stay of the termination of Dr. Klein's appointment to complete its investigation and legal review of his prohibited personnel practices complaint and determine whether to seek corrective action.  *Special Counsel ex rel. Dale Klein v. Department of Veterans Affairs*, MSPB Docket No. CB-1208-16-0023-U-1, Stay Request File (U-1 SRF), Tab 1.  OSC also requested an order returning Dr. Klein to his position and duties as a pain management physician at the Poplar Bluff Medical Center during the period of the stay.  *Id.*  The Board granted OSC's request for a stay through July 15, 2016, but denied OSC's request to order DVA to return Dr. Klein to his duties and responsibilities as a physician.  U-1 SRF, Tab 3.

¶3        On June 9, 2016, OSC filed a motion to modify the order granting the initial stay request by ordering that Dr. Klein be returned to his position as a pain management physician.  *Special Counsel ex rel. Dale Klein v. Department of Veterans Affairs*, MSPB Docket No. CB-1208-16-0023-U-2, Stay Request File (U-2 SRF), Tab 1.  In the alternative, OSC requested that the Board order DVA to

assign Dr. Klein to "mutually agreed upon duties that are ordinarily performed by physicians at the Poplar Bluff [Medical Center]." *Id.* at 11-12. On June 11, 2016, DVA filed a response to OSC's motion stating that the Poplar Bluff Medical Center's pain management clinic has been closed and explaining the difficulties in reopening the clinic during the 45-day period of the stay. U-2 SRF, Tab 2. On June 20, 2016, the Board denied OSC's motion for a modification of the initial stay order.

¶4      On June 30, 2016, OSC filed a timely request to extend the stay for an additional 60 days. *Special Counsel ex rel. Dale Klein v. Department of Veterans Affairs*, MSPB Docket No. CB-1208-16-0023-U-3, Stay Request File (U-3 SRF), Tab 1. The agency has filed a timely response. U-3 SRF, Tab 2.

## ANALYSIS

¶5      A stay granted pursuant to 5 U.S.C. § 1214(b)(1) is issued to maintain the status quo ante while OSC and the agency involved resolve the disputed matter. *Special Counsel v. Department of Transportation*, 74 M.S.P.R. 155, 157 (1997). The purpose of the stay is to minimize the consequences of an alleged prohibited personnel practice. *Id.* In evaluating a request for an extension of a stay, the Board will review the record in the light most favorable to OSC and will grant a stay extension request if OSC's prohibited personnel practice claim is not clearly unreasonable. *Id.* at 158. The Board may grant the extension for any period that it considers appropriate. 5 U.S.C. § 1214(b)(1)(B); *Special Counsel ex rel. Waddell v. Department of Justice*, 105 M.S.P.R. 208, ¶ 3 (2007).

¶6      In its request for an extension, OSC asserted that DVA had failed to respond to its requests for information and documents pursuant to 5 C.F.R. § 5.4. U-3 SRF, Tab 1 at 3, 10. After the agency responds, OSC may need to schedule and conduct witness interviews and, if necessary, request additional information based on these interviews. *Id.* After assessing the evidence, OSC may require additional time to attempt an informal resolution of the complaint, prepare a

report, or close the case, depending on the development of the evidentiary record. *Id.* OSC represents that the evidentiary record has not materially changed since it filed its initial stay request because DVA has failed to respond to its requests for documents and information. *Id.* at 6. OSC further requests that the Board order DVA to return Dr. Klein to his position as a pain management physician or assign him to a substantially similar physician position for which he is qualified. *Id.* at 6-9.

¶7        In response, the agency states that it opposes OSC's request for a stay extension but it only presents argument regarding OSC's request that Dr. Klein be restored to his former position. U-3 SRF, Tab 2 at 4-5. DVA has not rebutted OSC's assertions that it has failed to respond to requests for information and documents. *Id.* Although DVA states that it "does not believe that Dr. Klein will ultimately be entitled to any relief for his claims of whistleblower retaliation," *id.* at 4, it has not submitted any evidence or argument that casts any doubt upon the analysis in the Board's June 1, 2016 order explaining why OSC set forth sufficient grounds to stay the termination action pursuant to 5 U.S.C. § 1214. Under the circumstances, we will extend the stay of the termination action for 60 days.

¶8        The parties continue to dispute the appropriate duties for Dr. Klein to perform during the stay. The Board has held that the purpose of a stay is to preserve the status quo ante, not simply the status quo, and therefore, if a stay is appropriate, the employee must generally be placed in the same position he held before the agency's allegedly improper actions. *Special Counsel ex rel. Perfetto v. Department of the Navy*, 85 M.S.P.R. 454, ¶ 17 (2000). Further, the placement of an employee on administrative leave generally does not constitute a return to the status quo ante. *Special Counsel v. Department of Transportation*, 72 M.S.P.R. 104, 107 (1996). Nevertheless, compelling reasons may justify an employee not returning to his former duties as part of a return to

the status quo ante. *Id.* at 108. A mere anticipation of an undue disruption, however, does not constitute such a compelling reason. *Id.*

¶9 Dr. Klein is alleged to be a board-certified anesthesiologist and pain management specialist. U-3 SRF, Tab 1 at 3. OSC asserts that, in connection with DVA's initial agreement to "informally stay" his termination for 30 days, DVA assigned him to report to the finance director and to work in an office in a separate building from the clinical center. *Id.* at 4. OSC states that he was given a data‑entry assignment and other administrative tasks, but DVA has refused to return him to his former position or to assign him any clinical duties. *Id.* According to Dr. Klein, failure to engage in clinical practice for "an extended period of time" could place him at risk for losing his board certifications and also could affect his ability to obtain medical malpractice insurance if he left Government service. *Id.* at 5.

¶10 After the Board granted OSC's initial stay request but found that DVA was not required to return Dr. Klein to his duties and responsibilities as a physician, the agency notified Dr. Klein that he should report for duty as soon as possible and resume the administrative duties he was performing during the informal, temporary stay. U‑1 SRF, Tab 6. The agency maintains that its Poplar Bluff Medical Center lacks "any present need or use for a physician with his skills and privileges." U-3 SRF, Tab 2 at 4. The agency has explained that this facility "is not a full-service hospital that performs invasive surgical procedures" and specifically has no need for an anesthesiologist. *Id.* The agency asserts that it would have to reorganize the facility, recreate the closed pain management clinic, and begin scheduling patients at the clinic for the duration of the 60-day stay extension. *Id.* The agency maintains this "will do absolutely nothing to promote the [DVA]'s mission of providing quality professional health care to our veterans," *id.*, and could unnecessarily result in veterans seeking health care

being "bounced from one provider to another" while this matter is litigated, U−2 SRF, Tab 2 at 3.

¶11        OSC states that DVA's claim that it cannot find any appropriate physician duties for Dr. Klein "warrants further scrutiny." U-3 SRF, Tab 1 at 8. OSC notes that DVA has not questioned Dr. Klein's clinical competency or patient care, but rather has cited only the lack of work at the Poplar Bluff Medical Center as the reason for not returning him to clinical duties during the stay. *Id.* OSC suggests that, as an alternative to returning him to his former duties at that facility, the Board could order the agency to reassign Dr. Klein to another nearby DVA facility where he could provide pain management care during the stay. *Id.* In response to OSC's prior motion to modify the initial stay request, the agency claimed that there are no pain management clinical duties available for Dr. Klein to perform at the Poplar Bluff Medical Center and that he has not been granted required privileges to perform other clinical functions and procedures. U-2 SRF, Tab 2 at 3-4. In its pending request, OSC notes that, in addition to his pain management privileges, Dr. Klein is a board-certified anesthesiologist who is qualified to provide anesthesia for procedures that require patients to be sedated. U-3 SRF, Tab 1 at 4. DVA has responded that the Poplar Bluff Medical Center has no need for an anesthesiologist and "is not a full-service hospital that performs invasive surgical procedures." U-3 SRF, Tab 2 at 4.

¶12        At this time, we will not order the agency to return Dr. Klein to clinical duties that no longer exist at the Poplar Bluff Medical Center during the 60-day period of the extended stay. However, based on the current record, we cannot determine whether other physician duties for which the appellant is qualified are available at the center or any nearby agency facility. The DVA hereby is required to provide detailed evidence to establish that it has made an exhaustive search within the local commuting area for vacant positions or modified assignments with physician duties to which it can place the appellant and that it considered him for any such vacancies. To the extent that OSC believes that the agency has

failed to comply with the terms and conditions of this stay order as set forth below, OSC may petition the Board for enforcement of this order and may recommend appropriate sanctions to be imposed for the agency's noncompliance. *See* 5 C.F.R. part 1201, subpart F.

**ORDER**

¶13    Pursuant to 5 U.S.C. § 1214(b)(1)(B), a 60-day extension of the stay is hereby granted, and we ORDER as follows:

(1) The stay issued on June 1, 2016, is extended through and including September 13, 2016, on the terms and conditions that (a) DVA will reinstate Dr. Klein to the status quo ante but is not required to return him to his duties and responsibilities as a pain management physician at the Poplar Bluff Medical Center to the extent they no longer exist; and (b) DVA shall not affect any change to Dr. Klein's salary, grade level, or duty station, or impose upon him any requirement that is not required of other employees of a comparable grade level;

(2) Within 5 working days of this order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this order;

(3) Within 20 working days of this order, the agency shall provide a detailed accounting to the Board and OSC to prove that it has searched for vacant positions with physician duties within the local commuting area to which it can place the appellant and that it considered him for any such vacancies. The agency must provide a complete list of all such vacancies, including the duties of those positions, and whether or not it believes the appellant qualifies for those jobs, giving specific reasons in support of its conclusions. Likewise, the agency must provide detailed evidence to show that it considered modified assignments of positions with physician duties, within the local commuting area, for which the appellant qualifies. The agency's evidence must contain affidavits from responsible agency

officials confirming that an exhaustive search was done and that all vacancies, as well as all modified assignments, were considered.

(4) Any request for a further extension of the stay pursuant to 5 U.S.C. § 1214(b)(1)(B) must be received by the Clerk of the Board and the agency, together with any evidentiary support, on or before August 26, 2016. *See* 5 C.F.R. § 1201.136(b). Any comments on such a request that the agency wishes the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) must be received by the Clerk of the Board, together with any evidentiary support, on or before September 2, 2016. *See* 5 C.F.R. § 1201.136(b).


FOR THE BOARD:             _____
                                       Jennifer Everling
                                       Acting Clerk of the Board

Washington, D.C.